IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PATRICK R. ESTES, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | FILE NO. _____ |
| | ) | |
| AON RISK SERVICES | ) | |
| COMPANIES, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ENJOINING ENFORCEMENT OF THE AON COVENANTS AND BRIEF IN SUPPORT

Edward B. Krugman
Georgia Bar No. 429927
email: krugman@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
email: mykkeltvedt@bmelaw.com
Robert L. Ashe III
Georgia Bar No. 208077
Email: ashe@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone (404) 881-4100
Facsimile (404) 881-4111          *Attorneys for Plaintiff Patrick R. Estes*

1021240.1

## INTRODUCTION

Plaintiff Patrick R. Estes ("Estes") is a former employee of Defendant Aon Risk Services Companies, Inc. ("Aon"). At issue here are non-competition, non-solicitation and non-disclosure covenants (the "Aon covenants") contained in Estes's "Non-Solicitation Agreement" that are overbroad and unenforceable under Georgia law.[1]

In order to earn a livelihood, Estes desires to pursue business opportunities related to insurance services. In order to pursue those career opportunities, Estes is seeking in this action: (1) a declaratory judgment holding the Aon covenants unenforceable; and (2) an injunction enjoining their enforcement. Estes is also seeking to recover his attorneys' fees incurred in this action.

The Aon covenants plainly violate Georgia's public policy and are unenforceable. The Covenant Not to Compete in Section 1(b) unlawfully prohibits Estes from "accept[ing], engag[ing] in, service[ing] or perform[ing] " any insurance business with certain clients of Aon anywhere in the world, whether or not Estes solicits the business in any way. Agreement § 1(b). Numerous cases in

---

[1] An unsigned but otherwise true and correct copy of the self-labeled Non-Solicitation Agreement (hereinafter "Agreement") is attached as Exhibit B to the Declaration of Patrick R. Estes in Support of Plaintiff's Motion for Preliminary Injunction Enjoining Enforcement of the Aon Covenants ("Estes Decl."), attached hereto as Exhibit 1.

1021240.1

both the state and federal courts make clear that "Georgia courts refuse to enforce employment non-competition agreements that prohibit the employee from accepting unsolicited business from former clients after leaving employment." *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1306 (11th Cir. 2005).

The "Covenant Not to Hire" in Section 1(c) of the Agreement restricting Estes from hiring Aon Group[2] employees is void because it neither has a geographic limitation nor is it limited to employees with whom Estes had a relationship while he was at Aon. Additionally, the vague language contained in the covenant would potentially prohibit Estes from hiring employees who approached him first.

The non-disclosure covenant in Section 3 of the Agreement is unenforceable because it contains no time limitation and purports to protect a vague range of information, including material that is clearly not confidential. A non-disclosure covenant "which contains no time restriction" or "protects information which is publicly available from other sources" is "unenforceable under Georgia law." *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1242 (11th Cir. 2005).

---

[2] The Agreement defines Aon Group as Aon Risk Services Companies, Inc., "and its subsidiaries and affiliates (and divisions thereof)." Estes has never been provided with a comprehensive list of all of the entities that comprise the Aon Group. *See* Estes Decl., ¶ 3.

1021240.1

As there can be no good faith dispute as to the invalidity of the covenants at issue under Georgia law, the Court should grant Estes a preliminary injunction to remove any obstacle to him engaging in gainful economic activity in Georgia without uncertainty about his rights.

## BACKGROUND AND STATEMENT OF FACTS

### *Estes' Professional History & Employment with Aon*

Plaintiff Patrick Estes is a 58-year old insurance executive who graduated from Southeastern Oklahoma University with a bachelor of science degree in marketing in 1978. Complaint for Declaratory Judgment and Equitable Relief, filed herewith (Compl.") ¶ 5; Estes Decl. ¶ 2. Estes worked for over twenty years in the financial printing industry, providing companies with content control for documents associated with initial public offerings, mergers and acquisitions, and other sophisticated financial transactions. Compl. ¶¶ 5-6; Estes Decl. ¶ 2.

In February 2010, Estes accepted an offer of employment with Aon. As part of the terms of his employment, Estes was required to sign, without negotiation of terms, the Agreement at issue here. Estes signed the Agreement in February 2010. Compl. ¶ 7; Estes Decl. ¶ 3. While at Aon, Estes sold property/casualty insurance products, primarily to companies owned by private equity groups. Compl. ¶ 6; Estes Decl. ¶ 2.

1021240.1

4

*The Restrictive Covenants*

The Agreement contains several restrictive covenants.   First, Section 1(b)

contains a client non-compete covenant that is unenforceable because it purports to

prohibit Estes from accepting even unsolicited business from former clients.[3]   It

states:

> (b)   **Covenant Not to Compete.**   The Employee hereby
> covenants and agrees that, except with the prior written consent
> of Aon Group (on the Employee's own behalf or
> on behalf of any other person or entity) will not, during the
> course of employment, and for two (2) years after the end of
> employment, directly or indirectly, call upon, solicit, accept,
> engage in, service or perform, other than on behalf of Aon
> Group, any business of the same type or kind as the business
> performed by Aon Group from or with respect to (i) clients of
> Aon Group with respect to whom the Employee provided
> services, either alone or with others, or had a business
> relationship, or on whose account he worked or became
> familiar, or supervised directly or indirectly the servicing
> activities related to such clients, during the twenty-four (24)
> months prior to the termination of the Employee's employment
> with the Company and, further provided, such clients were
> clients of Aon Group either on the date of termination of
> Employee's employment with the Company or within twelve
> (12) months prior to such termination and (ii) prospective
> clients of Aon Group which the Employee alone, in
> combination with others, or in a supervisory capacity, solicited
> during the six (6) months prior to the end of employment and to
> which a proposal for services was rendered by the Company

---

[3] Notably, Aon inaccurately described this covenant to Estes as merely prohibiting
Estes from soliciting certain Aon clients.   *See* page 2 of the job offer letter from
Aon to Estes dated February 5, 2010, a true and correct copy of which is attached
as Exhibit A to the Estes Declaration.
1021240.1

> during the six (6) months prior to the end of the Employee's employment with the Company. "Client" means any person or entity listed on the books of Aon Group as such.
>
> The Employee acknowledges that there is no general geographical restriction contained in the preceding paragraph because the restriction applies only to the specified clients of Aon Group. Nothing in this Agreement shall prohibit the Employee from obtaining a livelihood for himself or his family by being engaged in the Business. The intent of the parties is that the Employee's restrictive covenant is limited only to those clients as above specified.

Agreement § 1(b).

Second, Section 1(c) contains a covenant that prohibits Estes from hiring any Aon Group employees, without any geographic limitation or limitation to employees with whom Estes had contact while at Aon. In addition, the covenant is so vague that it appears to prohibit Estes from speaking with or about any Aon employee regarding employment with anyone, even unrelated to Estes. Section 1(c) provides:

> (c)   **Covenant Not to Hire.**   The Employee hereby also agrees, for the duration of the term of the covenant set forth in Section 1(b) of this Agreement, not to, directly or indirectly, solicit or induce, or to cause any person or other entity to solicit or induce, any employee of Aon Group to work for Employee or for any third party or entity, or to leave the employ of Aon Group.

Agreement § 1(c).

1021240.1

6

Third, Section 3(a) contains a vague and overly inclusive confidentiality

provision with no time limit. Specifically, the covenant provides, in relevant part:

> Section 3. **Trade Secrets and Confidential Information; Inventions.**
>
> (a) **Trade Secrets and Confidential Information.** The Employee acknowledges that Aon Group's business depends to a significant degree upon the possession of confidential, proprietary and trade secret information which is not generally known to others, and that the profitability of the Business of Aon Group requires that this information remain proprietary to Aon Group. The Employee recognizes that, by virtue of his employment by the Company, and to assist him in the solicitation, production and servicing of client business, he will be granted otherwise prohibited access to such information. This information (hereinafter referred to as "Confidential Information") includes, without limitation: lists of clients and prospective clients; contract terms and conditions; client information relating to services, insurance, benefits programs, employees, finances, and compensation; copyrighted materials; corporate, management and business plans and strategies; compensation and revenues; methods and strategies of marketing; market research and data; technical know-how; computer software and manuals; policies and procedures; and the conduct of the affairs of Aon Group.
>
> The Employee shall not, except as required in the course of employment hereunder, disclose or use during or subsequent to the course of employment, any Confidential Information which has not been publically disclosed (other than by Employee in breach of this provision). All Confidential Information and all records and equipment and other materials relating in any way to Confidential Information shall be and remain the sole property of Aon Group during and after the end of employment.

> Upon termination of employment, the Employee shall promptly
> return to the Company all Confidential Information and all
> materials and all copies or tangible embodiments of materials
> involving Confidential Information in the Employee's
> possession or control. The Employee agrees to represent in
> writing to the Company upon termination of employment that
> he has complied with the provisions of this Section 3.

Agreement § 3.

### *Estes' Employment Status*

Estes tendered his resignation at Aon on Friday, November 9, 2012. Estes is

now employed at PentaRisk Associates of Georgia, LLC ("PentaRisk"), an

insurance agency based in Atlanta, Georgia. Estes Decl. ¶ 4. While Estes has not

solicited customers covered by the Agreement, Estes expects that former customers

of his will seek to do business with him again. Compl. ¶¶ 16-17; Estes Decl. ¶ 5.

Estes also anticipates that Aon will attempt to prevent him from servicing those

clients and will seek to enforce the unlawful and overbroad Aon covenants, as it

recently did with respect to several other former Aon employees. Compl. ¶ 13;

Estes Decl. ¶ 6.

## ARGUMENT AND CITATION OF AUTHORITY

"To be entitled to a preliminary injunction, [Estes] must show: (1) a

substantial likelihood of success on the merits; (2) irreparable harm to the plaintiff

unless the injunction issues; (3) that the threatened injury to the plaintiff outweighs

1021240.1

the harm to the defendant if the injunction issues; and (4) that the injunction will

not disserve the public interest." *MacGinnitie*, 420 F.3d at 1240-41.  Estes is

certain to succeed on the merits because the Aon covenants are unenforceable as a

matter of law.  In addition, an injunction is necessary to prevent irreparable harm

to Estes, will do no harm to Aon, and will affirmatively protect the public interest.

This Court should grant Estes' motion and enter a preliminary injunction

preventing Aon from seeking to enforce the unlawful covenants.

## I.   GEORGIA LAW AND STRICT SCRUTINY APPLY TO THE COVENANTS

### A.   This Court Must Apply Georgia Law in Construing the Aon Covenants.

While the Agreement containing the Aon covenants provides for the

application of Illinois law,[4] Georgia law governs this case.  Because overbroad

restrictive covenants contravene Georgia public policy, such covenants must be

evaluated under Georgia law, regardless of the choice of law provision in a

contract.  *Convergys Corp. v. Keener*, 276 Ga. 808, 582 S.E.2d 84 (2003); *Keener*

*v. Convergys Corp.*, 342 F.3d 1264, 1267 (11th Cir. 2003).

Federal and state courts in Georgia have repeatedly reaffirmed that Georgia

law applies to determine the reasonableness and enforceability of restrictive

---

[4] *See* Agreement § 5(c) "Governing Law."

1021240.1

covenants. *See, e.g., Manuel v. Convergys Corp.*, 430 F.3d 1132, 1137 (11th Cir. 2005) (confirming application of Georgia law in action challenging restrictive covenants, despite employment agreement's Ohio choice-of-law clause); *Bunker Hill Int'l, Ltd.*, 309 Ga. App. at 507-08, 710 S.E.2d at 666; *Hix v. Aon Risk Servs. South, Inc.*, Civil Action No. 1:11-CV-3141-RWS, 2011 WL 5870059, at *3 (N.D. Ga. Nov. 22, 2011) (applying Georgia law to covenants in contract with Georgia resident in spite of Illinois choice of law provision).

### B.    Strict Scrutiny Applies to the Restrictive Covenants.

For decades, "[b]y both constitutional and legislative provision, Georgia prohibit[ed] contracts or agreements in general restraint of trade." *Howard Schultz & Assocs. v. Broniec*, 239 Ga. 181, 183, 236 S.E.2d 265, 267 (1977).   Georgia courts accordingly have consistently applied "strict scrutiny" to restrictive covenants in employment agreements.[5] *Gordon Document Prods., Inc. v. Serv. Techs., Inc.*, 308 Ga. App. 445, 447, 708 S.E.2d 48, 52 (2011).   Any restrictions

---

[5] In 2010, Georgia voters ratified an amendment to the Georgia Constitution permitting the legislature to enact statutory provisions easing Georgia's strict anti-restrictive covenant law.  The new restrictive covenant statute was signed into law on May 11, 2011. Ga. L. 2011, Act 99, § 3.  Estes entered into the Agreement in February 2010.  This Court, therefore, must apply the law concerning restrictive covenants as it existed before May 2011. *Becham v. Synthes USA*, No. 11-14495, 2012 WL 1994604, at *1, *4 (11th Cir. June 4, 2012). *See also Hix*, 2011 WL 5870059, at *4, n.3.

contained in those covenants thus have to "be strictly limited as to time, territorial effect, capacity in which the employee is prohibited from competing, and as to overall reasonableness." *Id.*

### C.   Georgia Courts Will Not Blue-Pencil Covenants in Employment Agreements.

Georgia courts will not judicially rewrite or "blue-pencil" restrictive covenants in employment agreements that are objectionable to make them acceptable or enforceable. *Bunker Hill Int'l., Ltd.*, 309 Ga. App. at 508, 710 S.E.2d at 666; *Boone*, 2011 WL 3418382, at *3. Instead, Georgia courts "apply 'strict scrutiny' to [their] review of the restrictive covenants, and [] such covenants may not therefore be 'blue-penciled'; *i.e.*, severed." *MacGinnitie*, 420 F.3d at 1241. Thus, if any part of a covenant is found to be unenforceable, then the entire covenant is struck down. *Hix*, 2011 WL 5870059, at *4 (citing *Gordon Document Prods., Inc.*, 308 Ga. App. at 447 n.4, 708 S.E.2d at 52 n.4).

## II.   ESTES IS LIKELY TO SUCCEED ON THE MERITS BECAUSE THE AON COVENANTS ARE UNENFORCEABLE AS A MATTER OF LAW

### A.   The Covenant Not to Compete Is Unenforceable.

#### 1. The Covenant Not to Compete Is Overbroad Because It Prohibits Estes from Accepting Unsolicited Business Anywhere.

1021240.1

11

The Covenant Not to Compete contains no territorial limitation, and in fact expressly disclaims any such limitation. *See* Agreement § 1(a) ("not confined to any geographic area"). The covenant also purports to prohibit Estes from entering into business relationships with current or former Aon customers whether or not he solicits their business. It is therefore unenforceable as a matter of Georgia law. *See MacGinnitie*, 420 F.3d at 1241 ("[C]ontractual provisions which prevent employees from accepting business from unsolicited former clients [are] overbroad"); *Palmer & Cay, Inc.*, 404 F.3d at 1306 ("Georgia courts refuse to enforce employment non-competition agreements that prohibit the employee from accepting unsolicited business from former clients after leaving employment").

"[A] covenant prohibiting a former employee from merely accepting business, without any solicitation, is not reasonable." *Waldeck v. Curtis 1000, Inc.*, 261 Ga. App. 590, 592, 583 S.E.2d 266, 268 (2003). *See also Bunker Hill Int'l., Ltd.*, 309 Ga. App. at 507, 710 S.E.2d at 666; *Pregler v. C&Z, Inc.*, 259 Ga. App. 149, 150, 575 S.E.2d 915, 916 (2003) ("The nonsolicitation clause ... is unenforceable because it prevents [the former employee] from accepting business from *unsolicited* former clients") (emphasis in original); *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289, 295-96, 498 S.E.2d 346, 353 (1998) ("A covenant not to solicit ... may preclude the employee from soliciting the

1021240.1

12

employer's clients . . .but it may not preclude the employee from accepting

unsolicited business from those clients"); *Am. Gen. Life & Accident Ins. Co. v.*

*Fisher*, 208 Ga. App. 282, 283-84, 430 S.E.2d 166, 168 (1993).

### 2. The Covenant Not to Compete Is Overbroad Because It Purports to Bar Activities in Which Estes Did Not Engage And Does Not Provide Sufficient Notice of Prohibited Activities.

Georgia law requires a restrictive covenant to "specify with particularity the

activities which the employee is prohibited from performing," or else it will be

held "too broad and indefinite to be enforceable." *Global Link Logistics, Inc. v.*

*Briles*, 296 Ga. App. 175, 178, 674 S.E.2d 52, 55 (2009). The Agreement bars

Estes from "engag[ing] in" "any business of the same type or kind as the business

performed by Aon Group" with certain clients. *See* Agreement §1(b).

"Business" in turn is defined as

> the business of providing conventional and alternative risk management
> products and services covering the businesses of insurance brokerage,
> reinsurance brokerage, benefits consulting, compensation consulting,
> human resources consulting, management, investigatory and security
> consulting, managing underwriting and related services, including
> accounting, actuarial, claims management and handling, and information
> systems ... .

Agreement § 1(a).

The covenant does not limit itself to services in which Estes was actually

involved or had any knowledge, nor is the definition limited to services or

1021240.1

13

relationships established while Estes was employed by Aon.[6] Estes cannot

reasonably be expected to know all of the "type[s] or kind[s]" of different past or

present services, much less any possible future ones. Thus, activities which the

covenant purports to preclude are too large and indefinite. *Global Link Logistics,*

*Inc.*, 296 Ga. App. at 178, 674 S.E.2d at 55; *Russell Daniel Irrigation Co. v.*

*Coram*, 237 Ga. App. 758, 760, 516 S.E.2d 804, 806 (1999); *Uni-Worth Enters. v.*

*Wilson*, 244 Ga. 636, 639, 261 S.E.2d 572, 574 (1979); *Howard Schultz & Assoc.*,

239 Ga. at 184-85, 236 S.E.2d at 268.

Further, the covenant's failure to be tied to the activities in which Estes was

actually engaged while at Aon makes it overly broad. *Stultz v. Safety &*

*Compliance Mgmt., Inc.*, 285 Ga. App. 799, 802-03, 648 S.E.2d 129, 132 (2007);

*Am. General Life & Accident Ins. Co. v. Fisher*, 208 Ga. App. 282, 284, 430

S.E.2d 166, 168 (1993). Estes is a specialist in providing property/casualty

insurance products for private equity groups. Estes Decl. ¶ 2. Estes was involved

in property/casualty insurance while at Aon, and had no involvement in many of

Aon's other core businesses, e.g., "benefits consulting, compensation consulting,

human resources consulting, management, investigatory and security consulting,

---

[6] The Aon Group has "more than 500 offices in more than 120 countries" and "more than 62,000" employees. *See "*About Aon,*" available at* http://www.aon.com/about-aon/about-aon.jsp, last viewed October 24, 2012.

1021240.1

[or] managing underwriting."[7] A covenant which prohibits Estes from employment in fields in which he did not acquire any information while at Aon is overbroad and not reasonably tailored to protect any legitimate interest. *Stultz*, 285 Ga. App. at 803 n.3, 648 S.E.2d at 133 n.3.

### B. The Covenant Not to Hire Is Overbroad and Unenforceable Because It Prohibits Estes from the Unsolicited Hiring of with Any and All Aon Employees And Has No Prior Relationship Requirement or Territorial Limit.

Section 1(c) of the Agreement, entitled "Covenant Not to Hire," is a covenant "not to, directly or indirectly, solicit or induce, or to cause any person or other entity to solicit or induce, any employee of Aon Group to work for Employee or for any third party or entity, or to leave the employ of Aon Group." Agreement § 1(c). This covenant does not simply prohibit Estes from initiating contact with Aon employees for the purpose of hiring them, but instead, as the "Not to Hire" heading suggests, it attempts to prevent him from hiring them.

To illustrate, if an Aon employee called Estes about possible employment, and Estes were to mention a salary or benefits or give any other reason why working with Estes (or *anyone else, including a company with whom Estes had no ties whatsoever*) might be better than working for Aon, Estes arguably would have

---

[7] *See* Definition of "the Business" in Agreement §1(a).

"solicit[ed] or induce[d]" that employee to leave Aon, and thus be potentially liable. Similarly, were Estes called simply to provide a reference to an unrelated third party who was interested in hiring a current Aon employee, any positive reference might cause that third party to make the Aon employee an offer and thus induce him to leave, thereby violating this covenant. Such overbreadth (and vagueness) regarding contact with employees is unenforceable in Georgia. *Cox v. Altus Healthcare & Hospice, Inc.*, 308 Ga. App. 28, 32, 706 S.E.2d 660, 664-65 (2011).

Further, Georgia law prohibits employee non-solicitation provisions when, as here, they are apply to employees with whom the employee had no prior relationship and are not geographically limited. *MacGinnitie*, 420 F.3d at 1242; *Capricorn Sys., Inc. v. Pednekar*, 248 Ga. App. 424, 426-27, 546 S.E.2d 554, 557-58 (2001); *Hulcher Servs., Inc. v. R.J. Corman R.R. Co., LLC*, 247 Ga. App. 486, 491-92, 543 S.E.2d 461, 466-67 (2000). Section 1(c) of the Agreement applies to any Aon Group employee anywhere in the world, and thus is overbroad.

### C.   The Nondisclosure Covenant Is Unenforceable as a Matter of Law

As the Georgia Supreme Court has explained, "[c]ovenants not to disclose and utilize confidential business information are related to general covenants not to compete because of the similar employer interest in maintaining competitive

1021240.1

16

advantage.  Unlike general noncompetition provisions, however, specific

nondisclosure clauses bear no relation to territorial limitations and their

reasonableness turns on factors of time and the nature of the business interest

sought to be protected." *Durham v. Stand-by Labor of Ga.*, 230 Ga. 558, 563-64,

198 S.E.2d 145, 149 (1973).  Under the standards articulated in numerous Georgia

cases, the Aon covenant against the use and disclosure of purportedly confidential

information is unenforceable.

### 1.    The Nondisclosure Covenant Is Overbroad Because It Contains No Time Limit.

A nondisclosure covenant ostensibly designed to protect "confidential

information" must have a reasonable time period based on the nature of the

information involved.  *Cox*, 308 Ga. App. at 31, 706 S.E.2d at 664 (holding "[t]he

nondisclosure provisions in the form and the agreement are unenforceable on their

face because they are not limited in time"); *Equifax Servs., Inc. v. Examination

Mgmt. Servs., Inc.*, 216 Ga. App. 35, 37, 453 S.E.2d 488, 491 (1994) (finding

confidentiality provision unenforceable because it stated that information may not

be disclosed by the employee "at any time.").  The Aon nondisclosure covenant

has no time limit.  It provides that

> The Employee shall not, except as required in the course of employment
> hereunder, disclose or use during or subsequent to the course of

1021240.1

employment, any Confidential Information which has not been publicly disclosed ... All Confidential Information and all records and equipment and other materials relating in any way to Confidential Information shall be and remain the sole property of Aon Group during and after the end of employment.

Agreement § 3(a).

Thus, the non-disclosure covenant is unenforceable as a matter of law.

### 2. The Nondisclosure Covenant Is Overbroad And Unenforceably Vague Because It Prohibits The Use or Disclosure Of Nearly Any Information About The Company, Including Public Information.

Aon's covenant not to use or disclose confidential information is also

unenforceable because of the broad nature of the information it attempts to protect.

Under Section 3(a) of the Agreement, Estes is prohibited from any disclosure *or*

*use* of:

> [C]onfidential, proprietary and trade secret information which is not generally known to others ... ***This information*** (hereinafter referred to as "Confidential Information") ***includes, without limitation: lists of clients and prospective clients***; ***contract terms and conditions***; client information relating to services, insurance, benefits programs, employees, finances, and compensation; ***copyrighted materials***; corporate, management and business plans and strategies; ***compensation*** and revenues; methods and strategies of marketing; market research and data; ***technical know-how***; computer software and manuals; ***policies and procedures***; and ***the conduct of the affairs of Aon Group.***

Agreement § 3(a) (emphasis added).

In *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676, 238 S.E.2d 368, 369 (1977),

the Georgia Supreme Court struck down a covenant prohibiting the disclosure of

**"'any information concerning any matters affecting or relating to the business**

**of employer,' including but not limited to..."** (emphasis added).  The *Nasco*

Court found that covenant overbroad because it prohibited the disclosure of public

information and information not necessary for the protection of the employer.  *Id.*

*See also Manuel v. Convergys Corp.,* No. 1:04-cv-1279, 2004 WL 5545025, at *5-

6 (N.D. Ga. Oct. 18, 2004) (holding nondisclosure clause protecting public

information like names, addresses, price lists, and computer programs invalid).

The "Trade Secrets and Confidential Information" covenant in the

Agreement is just as overbroad as the non-disclosure covenants struck down in

*Nasco* and *Manuel*, particularly as it uses an expressly non-exhaustive or definitive

list to 'define' confidential information.

The inclusion of "policies and procedures" and "the conduct of the affairs of

Aon Group" in the definition of Confidential Information means that the covenant

is so broad that it applies to virtually every piece of paper and information at Aon.

As in *Nasco*, the scope of the information sought to be protected is overly broad

and the definition too vague to be enforceable.  *See also Global Link Logistics,* 296

Ga. App. at 177-78, 674 S.E.2d at 55 (finding "overbroad and unenforceable" a

1021240.1

19

nondisclosure covenant barring former employee "from using even his 'observations' during his tenure in any future employment and extend[ing] for an indefinite period of time."); *Pregler*, 259 Ga. App. at 151, 575 S.E.2d at 917 (holding that vague, broad list of protected information was unenforceable as insufficiently specific for injunctive relief).

### III.   A PRELIMINARY INJUNCTION IS WARRANTED TO PREVENT IRREPARABLE HARM TO ESTES AND TO UPHOLD THE PUBLIC INTEREST

Estes satisfies the four-pronged test for a preliminary injunction. *MacGinnitie*, 420 F.3d at 1240-41. First, as shown above, Estes is certain to succeed on the merits because the Aon covenants are plainly unenforceable. Second, failing to enjoin "unenforceable restrictions on [a plaintiff's] access to customers, employees, and information" causes irreparable harm because "[t]hese injuries are in the form of lost opportunities, which are difficult, if not impossible, to quantify" and "cannot be undone through monetary remedies." *Id.* at 1242. "Because of this public policy, the Georgia courts and [the 11th Circuit] have not hesitated to find irreparable harm in cases involving covenants not to compete." *Id.*

Third, the balance of harms strongly favors issuing an injunction. While Estes "is harmed by restrictive covenants which are against Georgia public policy,"

1021240.1

20

an injunction will do no harm to Aon because any "[l]oss of business due to free and fair competition is not a harm." *MacGinnitie*, 420 F.3d at 1243. Finally, because the overbroad Aon covenants are themselves contrary to Georgia public policy, enjoining their enforcement would affirm and protect the public interest. *See Nasco*, 239 Ga. at 676, 238 S.E.2d at 369 (explaining that overbroad covenants against disclosure and competition are contrary to the public interest and policy of Georgia).

In sum, a preliminary injunction should be entered because Estes has demonstrated (1) a substantial likelihood of success on the merits; (2) that he will suffer irreparable harm absent injunctive relief; (3) that the threatened harm to Estes outweighs any damage the injunction might cause Aon; and (4) that the injunction would serve the public interest. *MacGinnitie*, 420 F.3d at 1240-41.

## CONCLUSION

For the foregoing reasons, Estes respectfully requests that the Court enter a preliminary injunction barring Aon from enforcing or seeking to enforce the noncompetition, nonsolicitation and nondisclosure covenants in his Agreement.

Respectfully submitted, this 9th day of November, 2012.

/s/ Edward B. Krugman
Edward B. Krugman

Georgia Bar No. 429927
Email: krugman@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
Email: mykkeltvedt@bmelaw.com
Robert L. Ashe III
Georgia Bar No. 208077
Email: ashe@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309
Telephone (404) 881-4100
Facsimile (404) 881-4111

*Attorneys for Plaintiff Patrick R. Estes*

1021240.1

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1, I hereby certify that this brief complies with

Local Rule 5.1.

This 9th day of  November, 2012.

> /s/ Edward B. Krugman
> Edward B. Krugman
> Georgia Bar No. 429927

1021240.1

EXHIBIT

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **PATRICK R. ESTES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **FILE NO. _____** |
| | ) | |
| **AON RISK SERVICES** | ) | |
| **COMPANIES, INC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## DECLARATION OF PATRICK R. ESTES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ENJOINING ENFORCEMENT OF THE AON COVENANTS

Pursuant to 28 U.S.C. § 1746, I, Patrick R. Estes, hereby declare as follows:

1.

This Declaration is based on my own personal knowledge. I am over the age of 18 years and am competent to testify regarding those matters about which I have personal knowledge.

2.

I am 58 years old, and graduated from Southeastern Oklahoma University in 1978 with a B.S. in Marketing. I worked in the financial printing industry for more than twenty years. I first went to work in the insurance business in 2010, when I

1023655.1

1

Exhibit 1 - 1

accepted a job offer from Aon Risk Services Companies, Inc. ("Aon") to work in

Aon's Atlanta office as a Producer-Vice President. While employed at Aon, I sold

property/casualty insurance, primarily to companies owned by private equity groups.

3.

As a condition of my employment with Aon, I was required to sign what Aon

called a "Non-Solicitation Agreement." A true and correct copy of the offer letter

containing that requirement is attached hereto as Exhibit A. An unsigned but

otherwise true and correct copy of the Non-Solicitation Agreement ("Agreement")

that was attached to the offer letter is attached hereto as Exhibit B. I executed that

Agreement in February 2010 without the opportunity to negotiate its terms. The

Agreement defines Aon Group as Aon Risk Services Companies, Inc., "and its

subsidiaries and affiliates (and divisions thereof)." I have never, however, been

provided with a comprehensive list of all of the entities that comprise "Aon Group."

4.

I recently decided to look at opportunities outside of Aon and contacted

PentaRisk Associates of Georgia, LLC ("PentaRisk"), an insurance agency based in

Atlanta, Georgia, about possible employment. I reached out to PentaRisk because I

know several of the agents who work there. I ultimately decided to move to

PentaRisk and resign my employment with Aon on Friday, November 9, 2012.

1023655.1

2

Exhibit 1 - 2

5.

I desire to continue selling property/casualty insurance, including to some of the same companies I sold such insurance products to while I was employed at Aon. Since resigning from Aon, I have not solicited any of my customers to take their business from Aon.  I expect that if and when my former clients, most of whom I had relationships with prior to joining Aon, learn that I am again working in the industry, some of them will contact me and seek to continue doing business with me.

6.

I anticipate that Aon will seek to prevent me from working with my former clients.  I understand that Aon has recently been involved in several lawsuits, including some relating to PentaRisk, that dealt with restrictive covenants in agreements with other former employees and that Aon sought to enforce the covenants.   In order to continue to earn a livelihood in the industry of my choice, I need to know whether I am permitted to solicit and/or accept business from and service customers of Aon.

7.

Under penalty of perjury, I declare that the foregoing is correct and true.

This 8th day of November, 2012.

Patrick R. Estes

1023655.1

3

Exhibit 1 - 3

# EXHIBIT A

Exhibit 1 - 4



February 5, 2010

Patrick R. Estes
1305 Northcliff Trace
Roswell GA 30076

RE: Offer of Employment

Dear Patrick:

Congratulations! We are pleased to extend you an offer of employment with Aon Risk Services Companies a division of Aon Corporation. We believe Aon Risk Services Companies can provide an outstanding opportunity for you to continue the development of your professional career. We also believe that you will make a significant contribution to our company and we look forward to you joining us.

We have summarized some important information regarding your employment below.

Your position will be an exempt level Producer- Vice President, reporting to Bill Lenhart III at an annual salary of $135,000.00 paid semi-monthly.  If you reach $500,000 of booked business in your first 12 months of employment we will raise your salary to $150,000.  If you reach $500,000 in booked business in the second 12 months of employment we will raise it again to $165,000.

In addition, you will receive three weeks of vacation per year in accordance with Aon's Vacation Policy.  You are scheduled to start on a date mutually agreed upon by both parties.

You are eligible to participate in the Aon Producer Production Incentive Plan. Producers are eligible to earn 25% of all recurring ARS US revenue and 12.5% of all nonrecurring ARS US revenue they produce. The Producer will be responsible for producing new business equal to 1X base salary in order to receive any production incentive. Production incentives will be paid on dollar one, once salary is validated. To receive any such bonus, you must be employed with Aon Risk Services when the bonus is paid. The Aon Producer Production Incentive Plan may be revised at Aon's discretion at any time.

Any bonus greater than USD $50,000 will be subject to payment pursuant to the Aon Incentive Stock Program, payable in a combination of cash and restricted stock units of Aon Corporation common stock, in effect at such time.

Aon offers a comprehensive benefit package, including:

- Contributory medical and dental plans
- Aon Savings Plan - 401(k) Savings Account (employee and matching employer contributions)
- Short and Long-Term Disability plans
- Life and AD&D plans

During our New Employee Orientation Webcast, we will give you more information about these benefit programs and other important resources such as the My Aon Self-Service website. This is the website that you will use to enroll in our benefit plans.

Exhibit 1 - 5

In a few days, you will receive an email to access Aon's Employment Center to review and complete payroll forms including direct deposit, federal tax forms and section 1 of the Employment Eligibility Verification (I-9) form. Also on your first day, you will be asked to verify your identity and authorization for employment in the United States, in compliance with federal law. Typically, this is accomplished by presenting your U.S. passport or valid driver's license along with your U.S. Social Security card. Please bring the appropriate documentation with you on your first day of employment. (A comprehensive list of acceptable documents is available as you complete the I-9 form on the Employment Center site.)

To protect Aon's considerable investment in it's people and clients, you will also be required to execute the enclosed Non-Solicitation Agreement (the "Agreement") as a condition of your employment with us. The Agreement provides that for a period of two years following the date your employment with Aon terminates, you agree to refrain from soliciting Aon clients or customers with whom you had worked or become familiar with during the twenty-four month period prior to the end of your employment with Aon. You also agree not to induce or attempt to induce any Aon employee to leave the employ of Aon for a two year period following the date of your termination of employment with Aon. Please keep in mind that nothing in this Non-Solicitation Agreement prohibits you from obtaining a livelihood by working in the same business as Aon Risk Services. The provisions above simply help to safeguard our people, our clients, and our shareholders.

Your employment with Aon Risk Services Companies is contingent upon the successful completion of a background investigation. This investigation will verify your employment history, academic history, social security number and criminal history (if any). The information that you provided on the Aon Employment Application and Background Investigation Disclosure form will be used to conduct this background investigation.

Nothing in this letter is intended or should be construed as a contract or guarantee of indefinite employment. Employment with Aon Risk Services Companies is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause. This letter supersedes any prior representation or agreements between you and Aon Risk Services Companies, whether written or oral. This employment letter may not be modified or amended except by a written agreement, signed by the President of the Company for which you work, or his or her designee.

Prior to your start date, please sign and fax or scan the attached Non-Solicitation Agreement to Erin Scharf, Recruiting Associate at 312.381.9016 or erin_scharf@aon.com.

Patrick, we believe you will make a significant contribution to Aon Risk Services Companies and we look forward to you joining us.

If you have any questions, please do not hesitate to contact me at 843-492-0977.

Sincerely,


Ronnette Jenkins
Aon Recruiting

 cc: Park W Lenhart III

Exhibit 1 - 6

# EXHIBIT B

Exhibit 1 - 7

Appendix A

## NON-SOLICITATION AGREEMENT

---

NON-SOLICITATION AGREEMENT ("Agreement") dated as of TBD, (the "Effective Date") between Aon Risk Services Companies, a Maryland corporation (the "Company"), and Patrick R. Estes (the "Employee").

## RECITALS

This Agreement is entered into in consideration of the Employee's employment by the Company and the further mutual consideration and covenants by the parties as set forth herein.

NOW, THEREFORE, the Company and the Employee hereby agree to be bound by this Non-Solicitation Agreement, as follows:

### Section 1. Recitals and Acknowledgements; Covenants.

(a) **Recitals and Acknowledgments.** Aon Risk Services Companies, Inc., a Maryland corporation with its corporate and business headquarters in Chicago, Illinois, and its subsidiaries and affiliates (and divisions thereof) including the Company (collectively "Aon Group") are in the business of providing   conventional and alternative risk management products and services covering the businesses of insurance brokerage, reinsurance brokerage, benefits consulting, compensation consulting, human resources consulting, management, investigatory and security consulting, managing underwriting and related services, including accounting, actuarial, claims management and handling, and  information systems  on behalf of commercial and individual clients which are national and international and are not confined to any geographic area (the "Business").  An essential element of the Business is the development and maintenance of personal contacts and relationships with clients and prospective clients.  Aon Group invests considerable time and money to develop and maintain client relationships, including payment of employees' salaries, benefits, travel, entertainment and other business expenses and assistance in servicing clients by making available to its employees specially developed and researched industry data, client-specific information, legal advice, accounting support, marketing, advertising and other corporate services, as well as providing training and professional development and valuable confidential business and professional information, toward the development and maintenance of its client relationships and related goodwill.  While these clients and prospective clients may be secured or serviced by Aon Group employees, including the Employee, the Employee acknowledges that such clients and prospective clients remain at all times the clients and prospective clients of Aon Group and that the goodwill engendered by the relationships is intended to inure only to the benefit of Aon Group; the goodwill is owned by Aon Group; and Aon Group shall be the sole beneficiary of such goodwill during and after termination of the Employee's employment with Aon Group.

In addition, the Employee acknowledges that he has acquired and will acquire, solely for the purpose of furthering the Business, knowledge of Aon Group's Confidential Information, as defined in Section 3 of this Agreement.  Employee further acknowledges Aon Group's legitimate interest in safeguarding Confidential Information from disclosure.

The personal identification of clients of Aon Group with an Aon Group employee, including the Employee, creates the potential for the Employee's appropriation of the benefits of the

Exhibit 1 - 8

relationships developed with clients on behalf of and at the expense of Aon Group. Since Aon Group would suffer irreparable harm if the Employee left its employ and solicited the Business of the clients and prospective clients of Aon Group, it is reasonable to protect Aon Group against certain competitive activities by the Employee for a limited period of time after the Employee leaves employment so that Aon Group may renew or restore its business relationship with its clients and prospective clients.

Consequently, the Employee is willing to enter into the covenants set forth herein in order to provide Aon Group with reasonable protection for its client and prospective client relationships and its investment therein as above-described, its goodwill, and its Confidential Information, and acknowledges and agrees that the covenants contained in Sections 1(b) and 1(c) below are necessary for the protection of Aon Group and are reasonably limited with respect to the activities prohibited, duration, geographical scope and their effect on the Employee and the public.

(b)    **Covenant Not to Compete.** The Employee hereby covenants and agrees that, except with the prior written consent of Aon Group, the Employee (on the Employee's own behalf or on behalf of any other person or entity) will not, during the course of employment, and for two (2) years after the end of employment, directly or indirectly, call upon, solicit, accept, engage in, service or perform, other than on behalf of Aon Group, any business of the same type or kind as the business performed by Aon Group from or with respect to (i) clients of Aon Group with respect to whom the Employee provided services, either alone or with others, or had a business relationship, or on whose account he worked or became familiar, or supervised directly or indirectly the servicing activities related to such clients, during the twenty-four (24) months prior to the termination of the Employee's employment with the Company and, further provided, such clients were clients of Aon Group either on the date of termination of Employee's employment with the Company or within twelve (12) months prior to such termination and (ii) prospective clients of Aon Group which the Employee alone, in combination with others, or in a supervisory capacity, solicited during the six (6) months prior to the end of employment and to which a proposal for services was rendered by the Company during the six (6) months prior to the end of the Employee's employment with the Company. "Client" means any person or entity listed on the books of Aon Group as such.

The Employee acknowledges that there is no general geographical restriction contained in the preceding paragraph because the restriction applies only to the specified clients of Aon Group. Nothing in this Agreement shall prohibit the Employee from obtaining a livelihood for himself or his family by being engaged in the Business. The intent of the parties is that the Employee's restrictive covenant is limited only to those clients as above specified.

(c)    **Covenant Not to Hire.** The Employee hereby also agrees, for the duration of the term of the covenant set forth in Section 1(b) of this Agreement, not to, directly or indirectly, solicit or induce, or to cause any person or other entity to solicit or induce, any employee of Aon Group to work for Employee or for any third party or entity, or to leave the employ of Aon Group.

### Section 2. Company's Right to Injunctive Relief; Attorneys' Fees.

The Employee acknowledges that the Employee's services to the Company are of a unique character which gives them a special value to the Company, the loss of which cannot reasonably or adequately be compensated in damages in an action at law, and that a breach of Section 1 or 3 of this Agreement will result in irreparable and continuing harm to the Company or Aon Group, or both, and that therefore, in addition to any other remedy which the Company or Aon Group, or both, may have at law or in equity, the Company and Aon Group shall be entitled to injunctive relief for a breach of this Agreement by the Employee. The parties acknowledge and agree that Aon Group, Inc. is an intended third-party beneficiary of this Agreement. In the event that any action is filed in relation to Section 1 or 3 of this Agreement, the prevailing party in the

Exhibit 1 - 9

action shall recover from the non-prevailing party, in addition to any other sum that either party may be called upon to pay, a reasonable sum for the prevailing party's attorney's fees.

Section 3. **Trade Secrets and Confidential Information; Inventions.**

(a) **Trade Secrets and Confidential Information.** The Employee acknowledges that Aon Group's business depends to a significant degree upon the possession of confidential, proprietary and trade secret information which is not generally known to others, and that the profitability of the Business of Aon Group requires that this information remain proprietary to Aon Group. The Employee recognizes that, by virtue of his employment by the Company, and to assist him in the solicitation, production and servicing of client business, he will be granted otherwise prohibited access to such information. This information (hereinafter referred to as "Confidential Information") includes, without limitation: lists of clients and prospective clients; contract terms and conditions; client information relating to services, insurance, benefits programs, employees, finances, and compensation; copyrighted materials; corporate, management and business plans and strategies; compensation and revenues; methods and strategies of marketing; market research and data; technical know-how; computer software and manuals; policies and procedures; and the conduct of the affairs of Aon Group.

The Employee shall not, except as required in the course of employment hereunder, disclose or use during or subsequent to the course of employment, any Confidential Information which has not been publicly disclosed (other than by Employee in breach of this provision). All Confidential Information and all records and equipment and other materials relating in any way to Confidential Information shall be and remain the sole property of Aon Group during and after the end of employment.

Upon termination of employment, the Employee shall promptly return to the Company all Confidential Information and all materials and all copies or tangible embodiments of materials involving Confidential Information in the Employee's possession or control. The Employee agrees to represent in writing to the Company upon termination of employment that he has complied with the provisions of this Section 3.

(b) **Inventions.** The Employee hereby assigns to the Company his entire right, title and interest in and to all discoveries and improvements, patentable or otherwise, trade secrets and ideas, writings and copyrightable material, which may be conceived by the Employee or developed or acquired by him during his employment and which may pertain directly or indirectly to the business of the Company or any of its affiliates, parent companies, or subsidiaries, and which the Employee agrees is work for hire performed in the scope of his employment. The Employee agrees to disclose fully all such developments to the Company upon its request, which disclosure shall be made in writing promptly following any such request. The Employee shall upon the Company's request, execute, acknowledge and deliver to the Company all instruments and do all other acts which are necessary or desirable to enable the Company or any of its affiliates, parent companies, or subsidiaries to file and prosecute applications for, and to acquire, maintain and enforce, all patents, trademarks, and copyrights in all countries.

Section 4. **Mergers and Consolidations; Assignability.**

The rights and obligations under this Agreement shall inure to the benefit of and be binding upon the Company and its successors and assigns. By way of explanation, and without limiting the generality of the foregoing sentence, if the Company or any entity resulting from any merger or consolidation referred to in this Section 4 is merged with or consolidated into any other entity or entities, or if substantially all of the assets of the Company or any such entity are sold or otherwise transferred to another entity, the provisions of this Agreement shall be binding upon and shall inure to the benefit of the continuing entity in or the entity resulting from such merger or consolidation or the entity to which such assets are sold or transferred. This Agreement shall not be assignable by the Employee.

Exhibit 1 - 10

Section 5. **Miscellaneous.**

(a) **Waiver and Modification.** Waiver of any term or condition of this Agreement by any party shall not be construed as a waiver of a subsequent breach or failure of the same term or condition, or a waiver of any other term or condition of this Agreement. Any waiver must be in writing. This Agreement may not be amended, altered or modified without the prior written consent of both parties and such instrument must acknowledge that it is an amendment or modification of this Agreement.

(b) **Captions.** The captions in this Agreement are not part of its provisions, are merely for reference and have no force or effect. If any caption is inconsistent with any provision of this Agreement, such provision shall govern.

(c) **Governing Law.** The validity, interpretation, construction, performance, enforcement and remedies of or relating to this Agreement, and the rights and obligations of the parties hereunder, shall be governed by and construed in accordance with the substantive laws of the State of Illinois, without regard to the conflict of law principles, rules or statutes of any jurisdiction.

(d) **Severability.** To the extent that the terms set forth in this Agreement or any word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified or deleted in such manner so as to afford the Company and Aon Group the fullest protection commensurate with making this Agreement, as modified, legal and enforceable under applicable laws, and the balance of this Agreement shall not be affected thereby, the balance being construed as severable and independent.

(e) **Employee-at-Will.** Nothing in this Agreement shall be construed to create contractual employment rights other than as an employee terminable at-will.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year first above written.


By: Ronnette Jenkins
Title: Senior HR Specialist


_____
Patrick R. Estes

Aon Risk Services Companies

Exhibit 1 - 11

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the within and

foregoing **PLAINTIFF'S MOTION AND BRIEF IN SUPPORT FOR**

**PRELIMINARY INJUNCTION ENJOINING THE ENFORCEMENT OF**

**THE AON COVENANTS** on the registered agent of Aon Risk Services

Companies, Inc. and Aon Group, Inc. via hand delivery, and addressed as follows:

    Aon Risk Services Companies, Inc.
    c/o Corporation Service Company
    40 Technology Parkway south
    Suite 300
    Norcross, Georgia 30092

    Aon Group, Inc.
    c/o The Prentice-Hall Corporation System
    7 St Paul Street
    Suite 1660
    Baltimore, Maryland 21202

This 9th day of November, 2012.


                        /s/ Edward B. Krugman
                        Edward B. Krugman
                        Georgia Bar No. 429927

1021240.1